UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIKITA SMITH AND                             )
KEVIN THOMAS                                 )
                                             )
Plaintiffs,                                  )
                                             )
v.                                           )        Case No.
                                             )
CITY OF DETROIT, AND                         )
POLICE OFFICER JOHN GAINES,                  )
POLICE OFFICER JOHN MORRISON,                )
POLICE OFFICER JOHN PAUL,                    )
POLICE OFFICER JOHN DOE NO. 1,               )
POLICE OFFICER JANE DOE NO. 1,               )
Defendants.                                  )
_____/

## COMPLAINT

Plaintiffs Nikita Smith and Kevin Thomas, by and through his attorney, Olson PLLC, states the following for her Complaint against Defendant City of Detroit ("Defendant City") and Defendant Police Officer John Gaines ("Gaines"), Police Officer John Morrison ("Morrison"), Police Officer John Paul ("Paul"), Police Officer John Doe No. 1 and Police Officer Jane Doe No. 1:

1.      This is a civil action arising under 42 U.S.C. § 1983 and common law avenues of recovery for deprivations of Plaintiff's rights.

2.     Plaintiffs sue the individual Defendants in their individual capacities.

## JURISDICTION

3.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1367(a) and § 1341.

## VENUE

4.     Venue is proper under 28 U.S.C. § 1391(b).

5.     At all times relevant herein, Plaintiffs resided in and were citizens of Detroit, Michigan.

6.     Defendant City is a political subdivision of the State of Michigan acting under color of State law, and is a person for purposes of a 42 U.S.C. § 1983 action.

7.     Defendants Gaines, Morrison, Paul, John Doe No. 1 and Jane Doe No. 1 were at all relevant times police officers employed by Defendant City.

## COLOR OF STATE LAW

8.     At all times relevant herein, Defendants Gaines, Morrison, Paul, John Doe No. 1 and Jane Doe No. 1 acted under color of state law.

9.     Particularly, Defendants Gaines, Morrison, Paul, John Doe No. 1 and Jane Doe No. 1 acted under color of the laws, statutes, ordinances,

regulations, policies, customs and usages of the State of Michigan, and its political subdivisions, including the City of Detroit.

## FACTUAL BACKGROUND

10.   On or about January 14, 2016, Plaintiffs owned three dogs, Debo, Mama who was pregnant at the time and Smoke.

11.   On or about January 14, 2016, Plaintiffs and their three dogs resided at 18488 Sussex, Detroit, Michigan 48235.

12.   On or about January 14, 2016 at approximately 12:30 p.m., a large number of Defendant City's police officers arrived at the residence, including Defendants Gaines, Morrison, Paul, John Doe No. 1 and Jane Doe No. 1 to execute a search warrant.

13.   Only Plaintiff Nikita Smith was present at the residence at that time.

14.   When Detroit Police officers knocked on the door, Plaintiff Nikita Smith said to the police officers, "let me put my dogs down in the basement."

15.   Thus, Defendants knew prior to entry that Plaintiffs' dogs were present on the property and that Plaintiff Nikita Smith was going to sequester them.

16.     Therefore, Defendants' dogs were no surprise to Defendants because Plaintiff Nikita Smith told them she was going to "put my dogs in the basement."

17.     Next, Plaintiff Nikita Smith placed two of her dogs, Debo and Mama, in the basement and blocked the entryway to the basement.

18.     Plaintiffs other dog, Smoke, was sequestered in the bathroom with the door closed.

19.     Defendant police officers next entered the residence without permission.

20.     Plaintiffs' dog Debo got past the obstruction from the basement and sat next to Plaintiff Nikita Smith.

21.     As Plaintiff Nikita Smith reached down to her dog Debo, Defendant police officers shot Debo multiple times.

22.     Plaintiff Nikita Smith was down range from the gunfire and in close proximity to it.

23.     Plaintiff Nikita Smith watched her dog, Debo, die on the floor next to her.

24.     Next, with advance knowledge of a dog in the basement, three Detroit police officers stormed down into the basement where the police officers shot to death Plaintiffs' dog Mama, a pregnant female dog.

2016-cv-11882-GCS-EAS    Doc # 1    Filed 05/25/16    Pg 5 of 18    Pg ID 5

25.    Mama was not barking or attacking the police at any time.

26.    Mama died in a pool of blood in the corner of the basement.

27.    Next, Defendant Gaines and Paul made their way to the bathroom where Plaintiff's dog Smoke was sequestered behind the closed bathroom door.

28.    A police officer exclaimed that "there is a dog in the bathroom."

29.    Plaintiff Smith next witnessed a police officer open the bathroom door and verify that Smoke was in the bathroom by cracking the door open and then closing it again.

30.    A police officer then asked, "should we do that one, too?"

31.    Another officer responded, "yes."

32.    Defendant Gaines and Paul then fired multiple shots through the closed bathroom door, which killed Smoke.  (Exhibit 1.)

33.    After the gunfire was over, Officer Gaines laughed and said to another Detroit City police officer, "did you see that? I got that one good!"

34.    A police officer next said to Plaintiff Nikita Smith that, "I should have killed you, too."

35.    Later, the same Detroit police officer said to Plaintiff Nikita Smith, "you could have been killed."

36.    None of Plaintiffs' dogs attacked or threatened and Defendant in any way.

37.    It was objectively unreasonable to shoot Plaintiffs' dogs.

38.    Indeed, Defendant police officers acted as dog death squad and stormed through the house executing Plaintiffs' dogs as they went.

39.    City of Detroit Animal Control removed the bodies of Plaintiffs' three dogs enclosed in plastic bags.

40.    Plaintiffs issued a FOIA Request to the City, in which the City declined to identify further the police officers that shot Plaintiffs' dogs. (Exhibit 2.)

**COUNT I**
**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983 AND FOURTH AMENDMENT**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES**
**AND ATTORNEY'S FEES**

41.    Plaintiffs re-allege all of the preceding paragraphs.

42.    The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably destroying or seizing a citizen's property.

43.    "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir.

1994), overruled on other grounds, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (citation omitted).

44.     "The killing of [a] dog is a destruction recognized as a seizure under the Fourth Amendment" and can constitute a cognizable claim under § 1983. *Id.*

45.     Dogs are more than just a personal effect. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 975 (9th Cir. 2005) (holding that defendant police's shooting of plaintiff's dogs was an unreasonable seizure in particular where defendant police officers had notice of the dog's presence and were not surprised by them and had no plan to deal with the dog other than by shooting it).

46.     The emotional attachment to a family's dog is not comparable to a possessory interest in furniture. *Id*.

47.     Indeed, Plaintiffs' Fourth Amendment interests involved are substantial because "the bond between a dog owner and his pet can be strong and enduring," and Plaintiffs think of their dogs "in terms of an emotional relationship, rather than a property relationship." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003).

48.     In circumstances where, as here, the dogs do not pose an imminent threat, or the officer is not surprised by the dog and has had time

to make alternate plans to control the dog, other than shooting, the shooting of the dog has been found to be an unreasonable seizure. *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 270-71 (D. Conn. 2005). (citing cases and discussing *San Jose Charter of the Hells Angels Motorcycle Club*, 402 F.3d at 975).

49. Defendants' acts described herein were objectively unreasonable allowing for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

50. Indeed, Defendants' acts described herein were intentional, grossly negligent, amounted to reckless or callous indifference to Plaintiff's constitutional rights.

51. Defendants' premeditated shooting and killing of Plaintiffs' dogs was unreasonable under the totality of the circumstances and therefore constituted an unreasonable seizure under the Fourth Amendment in particular because there was no exigency and police officers could have conducted their business without killing Plaintiffs' dogs.

52. Defendants premeditated shooting and killing of Plaintiffs' dogs was more intrusive than necessary. *Florida v. Royer*, 460 U.S. 491,

504 (1983) ("A seizure becomes unlawful when it is 'more intrusive than necessary'").

53.    No governmental interest justifies the intrusion involved in this case.

54.    Defendants' shooting and killing of all of Plaintiffs' dogs was objectively unreasonable because none of them surprised, threatened or attacked any Defendant.  Indeed, Debo sat next to Plaintiff Nikita Smith when she was shot to death.  Mama cowered in the basement when Defendants went down and shot her to death.  Finally, Smoke was locked in the bathroom when she was shot to death through the closed bathroom door.

55.    There was no exigency and Defendants were not in any immediate danger that would have justified the use of deadly force. *Fuller v. Vines*, 36 F.3d 65 (9th Cir. 1994).

### COMPENSATORY DAMAGES

56.    Under 42 U.S.C. § 1983 Plaintiffs are entitled to an award of compensatory damages against each individual Defendant in their individual capacity.

57.    Compensatory damages include mental anguish and suffering. *Moreno v. Hughes*, 2016 U.S. Dist. LEXIS 5697 ( E.D. Mich. Jan. 19, 2016).

9

**PUNITIVE DAMAGES**

58.     The individual Defendants' actions were:

    a.      Reckless;

    b.      Showed callous indifference toward the rights of
            Plaintiffs; and

    c.      Were taken in the face of a perceived risk that the actions
            would violate federal law.

59.     Plaintiffs are entitled to an award of punitive damages against
each individual police officer in their individual capacity, in order to punish
them and to deter others.

60.     Apparently, such deterrence is necessary in light of the fact that
Detroit Police Officer Darrell Dawson unreasonably shot and killed Detroit
citizen Darryl Lindsay's dog, Babycakes, which culminated in a November
18, 2015 settlement by the City of $100,000 that was apparently insufficient
to deter Defendant police officers from the January 14, 2016 shooting of
dogs in violation of the Fourth Amendment.

**ATTORNEY'S FEES**

61.     Under 42 U.S.C. § 1988 if Plaintiffs are the prevailing party in
this litigation, then they will be entitled to receive an award of reasonable
attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiffs request a judgment under 42 U.S.C. § 1983 and 1988 against the individual Defendants in their individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiffs pray for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983  AND FOURTH AMENDMENT**
**AGAINST DEFENDANT CITY**
**FOR COMPENSATORY DAMAGES AND ATTORNEY'S FEES**

62.    Plaintiffs re-allege their prior allegations.

**COMPENSATORY DAMAGES**
**1ST ALTERNATIVE BASIS OF MUNICIPAL LIABILITY**
**DELEGATION TO INDIVIDUAL DEFENDANT**

63.    As the first alternate basis for liability against Defendant City, the policy maker for Defendant City, the mayor, or someone else, and that person delegated full authority and/or empowered the individual Defendant's policy.

64.    That delegation of authority by the actual policy maker of Defendant City placed the individual Defendant in a policy making position, and the acts of the individual Defendant may fairly be said to be those of the

municipality.  *Id*. at 483, and *Kujawski v. Board of Com'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999).

65.    Those acts therefore subject Defendant City to liability for the constitutional violations of the individual Defendant.  *Id*. at 483; *Kujawski v. Board of Com'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999).

## 2ND ALTERNATIVE BASIS OF MUNICIPAL LIABILITY – FAILURE TO TRAIN, SUPERVISE, CONTROL

66.    As the second alternative basis for liability against Defendant City, Defendant City failed to properly hire, train, supervise, control and/or discipline the individual Defendant with respect to dogs such as Plaintiffs' dogs, who live throughout the City.

67.    Defendant City was thus deliberately indifferent to the rights of others in adopting its hiring and training practices, and in failing to supervise, control and/or discipline the individual Defendant such that those failures reflected a deliberate or conscious choice by Defendant City made from among various alternatives. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

68.    Those deficiencies were the moving force that caused Plaintiffs damages. *Larson By Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996).

69.    In light of the fact that it was the individual Defendant who engaged in the constitutional violations, the need to correct the deficiencies is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of Defendant City can reasonably be said to have been deliberately indifferent to the need. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

70.    If Defendant City had properly hired, trained, supervised, controlled and/or disciplined the individual Defendant, the constitutional violations committed by the individual Defendant would not have occurred.

71.    These failures by Defendant City to hire, train, supervise, control and/or discipline the individual Defendant subject Defendant City to liability for the constitutional violations committed by the individual Defendant.

72.    On information and belief, Defendant City had no policy or training in place in how to handle a dog chained to the side of the house, which was evident in Defendants' actions alleged herein.

73.    Such training was at all relevant times available online at no cost to Defendant City.

**COMPENSATORY DAMAGES**

74.     Under 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against Defendant City.

**ATTORNEY'S FEES**

75.     Under 42 U.S.C. § 1988 if Plaintiffs are the prevailing party in this litigation, then they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiffs request a judgment under 42 U.S.C. § 1983 and 1988 against Defendant City for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees, and non-taxable expenses, for costs and such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

**COUNT III
VIOLATION OF CIVIL RIGHTS
42 U.S.C. § 1983, *RESPONDEAT SUPERIOR*
AGAINST DEFENDANT CITY
FOR COMPENSATORY DAMAGES AND ATTORNEY'S FEES**

76.     Plaintiffs re-allege their prior allegations.

77.     At all relevant times the individual Defendants were:

     a.     Serving as an employee of Defendant City as a police officer;

     b.     Engaging in a government function; and

      c.      Acting within the course and scope of that employment.

78.    Defendant City is liable under a theory of *respondeat superior*.

79.    The actions of the individual Defendant caused Plaintiffs to suffer the damages outlined herein.

### COMPENSATORY DAMAGES

80.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against Defendant City.

### ATTORNEY'S FEES

81.    Under 42 U.S.C. § 1988 if Plaintiffs are the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiffs request a judgment under 42 U.S.C. § 1983 and 1988 against Defendant City for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees, and non-taxable expenses, for costs and such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

### COUNT IV
### CONVERSION

82.    Plaintiffs repeat their prior allegations.

83.    "Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights

therein." *Thoma v. Tracy Motor Sales, Inc.,* 360 Mich. 434, 438, 104 N.W.2d 360 (1960)(quoting *Nelson & Witt v. Texas Co.,* 256 Mich 65, 70)).

84.    Defendants' execution of Plaintiffs' three dogs was a distinct act of dominion wrongfully exerted over Plaintiffss dog in denial of or inconsistent with Plaintiffs' rights.

THEREFORE, Plaintiffs request relief  under applicable law or in equity, including, without limitation, a judgment and an award of statutory treble damages and all reasonable costs, interest and attorney fees.  M.C.L. § 600.2919a.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85.    Plaintiffs incorporate their prior allegations.

86.    Defendants' conduct described herein was extreme and outrageous conduct because it was beyond all possible bounds of decency and could be regarded as atrocious and utterly intolerable in a civilized community and would (and in fact has) cause an average member of the community would . . . exclaim, "Outrageous!"

87.    Defendants' actions described herein were intentional or reckless.

88.     Defendants' actions caused Plaintiffs severe emotional distress so severe that no reasonable person could be expected to endure it, including without limitation, severe horror, grief and anger over the loss of Plainitffs' dogs, nausea, inability to eat, loss of sleep, inability to concentrate, concern and fear for his safety. *Haverbush v. Powelson*, 217 Mich. App. 228, 234-35 (1996).

THEREFORE, Plaintiffs request a judgment for damages, exemplary damages, reasonable attorneys' fees and costs and any other relief that the Court deems just and equitable.

Respectfully submitted,

Olson PLLC

s/Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
(248) 415-6263 Facsimile
colson@olsonpllc.mygbiz.com
*Attorneys for Plaintiffs*

May 25, 2016
Detroit, Michigan

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

demands trial by jury in this action of all issues so triable.

Respectfully submitted,

OLSON PLLC

s/Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
(248) 415-6263 Facsimile
colson@olsonpllc.mygbiz.com
*Attorneys for Plaintiffs*

May 25, 2016
Detroit, Michigan