# DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NIKITA SMITH AND
KEVIN THOMAS,

                 **Plaintiffs,**                     **Case No.  16-11882**

**v.**                                       **Hon: George Caram Steeh**

CITY OF DETROIT, AND
POLICE OFFICER BASHAWN GAINES,
POLICE OFFICER WILLIAM MORRISON,
POLICE OFFICER RYAN PAUL,
POLICE OFFICER JEFFREY WAWRZYNIAK,
POLICE OFFICER SADIE HOWELL, AND
SGT. ROY HARRIS,

                 **Defendants.**

---

| **CHRISTOPHER S. OLSON (P-58780)** | **MICHAEL M. MULLER (P-38070)** |
|---|---|
| Attorney for Plaintiff | Attorney for Defendant City |
| 32121 Woodward Avenue, Suite 300 | 2 Woodward Avenue, Suite 500 |
| Royal Oak, MI 48073 | Detroit, MI 48226 |
| (248) 672-7368 | (313) 237-5052 |
| colson@olsonpllc.mygbiz.com | mullm@detroitmi.gov |

---

## MOTION FOR SUMMARY JUDGMENT
## ON BEHALF OF DEFENDANTS

    NOW COME defendants, and for their Motion for Summary Judgment, state as follows:

    1.  That the instant case arises out of the January 14, 2016 drug raid and arrest of plaintiff, Nikita Smith.

    2.  That during the course of the raid, defendant police officers were attacked

by two pit bulls and a Rottweiler necessitating three of the defendant officers to shoot the dogs.

3.  That Plaintiffs have asserted claims against the six police officers for illegal seizure of the dogs in violation of the 4th Amendment under 42 U.S.C. §1983, three alternate Monell claims against the City of Detroit, and claims for conversion and intentional infliction of emotional distress under state law.  (Exhibit A).

4.  That there is no genuine issue of material fact regarding any of the above claims, and as such, defendants are entitled to judgment as a matter of law.  (as more fully set forth in the brief attached hereto).

WHEREFORE, defendants request this honorable court enter an order dismissing plaintiff's claims against them with prejudice.

Respectfully submitted,


**/s/Michael M. Muller**
**MICHAEL M. MULLER (P-38070)**
**Senior Assistant Corp Counsel**
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Dated:  March 15, 2017                    (313 237-5052

# DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NIKITA SMITH AND
KEVIN THOMAS,

                **Plaintiffs,**                        **Case No.  16-11882**

**v.**                                      **Hon: George Caram Steeh**

CITY OF DETROIT, AND
POLICE OFFICER BASHAWN GAINES,
POLICE OFFICER WILLIAM MORRISON,
POLICE OFFICER RYAN PAUL,
POLICE OFFICER JEFFREY WAWRZYNIAK,
POLICE OFFICER SADIE HOWELL, AND
SGT. ROY HARRIS,

                **Defendants.**

| **CHRISTOPHER S. OLSON (P-58780)** | **MICHAEL M. MULLER (P-38070)** |
|---|---|
| Attorney for Plaintiff | Attorney for Defendant City |
| 32121 Woodward Avenue, Suite 300 | 2 Woodward Avenue, Suite 500 |
| Royal Oak, MI 48073 | Detroit, MI 48226 |
| (248) 672-7368 | (313) 237-5052 |
| colson@olsonpllc.mygbiz.com | mullm@detroitmi.gov |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Oral Argument Requested**

## STATEMENT OF ISSUES

1. Are all individual defendants entitled to summary judgment for want of a genuine issue of material fact regarding plaintiff's Federal Civil Rights claims for illegal seizure of the dogs where the dogs were not licensed in misdemeanor violation of state and local law, and as such, plaintiffs had no legitimate possessory rights to the dogs?

Defendants say: "Yes"

2. Are defendants, Jeffery Wawrzyniak, Sadie Howell, and Roy Harris entitled to summary judgment for want of a genuine issue of material fact regarding plaintiff's Federal Civil Rights claims for illegal seizure of the dogs and state claims of conversion and intentional infliction of emotional distress where they did not shoot the dogs?

Defendants say: "Yes"

3. Are all individual defendants entitled to summary judgment for want of a genuine issue of material fact regarding plaintiff, Nikita Smith's Federal Civil Rights claims for illegal seizure of the dogs where she has no legitimate possessory interest in the dogs?

Defendants say: "Yes"

4. Are all individual defendants entitled to summary judgment due to qualified immunity?

Defendants say: "Yes"

5. Is defendant, City of Detroit entitled to summary judgment on plaintiffs' claims for conversion and intentional infliction of emotional distress due to governmental immunity?

Defendants say: "Yes"

6. Is defendant, City of Detroit entitled to summary judgment for want of a genuine issue of material fact regarding plaintiff's Monell claims because there is no evidence that the defendant officers acted unconstitutionally, no evidence that defendant officers acted pursuant to an unconstitutional City custom, policy and/or procedure, and where the City can legally never be held liable for Civil Rights violations under §1983 on a theory of respondeat superior?

Defendants say: "Yes"

7. Are all individual defendants entitled to summary judgment as to plaintiffs' conversion claim due to privilege, and, if not, are damages limited to the value of the dogs under Michigan law?

Defendants say: "Yes"

8.  Are all individual defendants entitled to summary judgment as to plaintiffs'
claim for intentional infliction of emotional distress because Michigan law does
not allow emotional damages for loss of personal property/dogs, and, if not, are
damages limited to the value of the dogs under Michigan law?

Defendants say: "Yes"

9.  Are all individual defendants entitled to summary judgment on plaintiffs' state
law claims of conversion and intentional infliction of emotional distress due to
immunity under <u>Odom v. Wayne County</u>, 482 Mich. 459; 760 N.W.2d 217 (2008)

Defendants say: "Yes"

10.  Are all defendants entitled to summary judgment for want of a genuine issue of
material fact regarding the dog named "Mama" where the only testimony is from
defendants Ryan Paul and Jeffrey Wawrzyniak that the dog was barking and charged
up the basement steps at them?

Defendants say: "Yes"

## **CONTROLLING AUTHORITIES**

Adams v. City of Auburn Hills, 336 F.3d 515 (6th Cir. 2003)

Anderson v. Liberty Lobby, 477 U.S. 242; 91 L.Ed.2d 202; 106 S.Ct. 2505 (1986)

Barber v. City of Salem, 953 F.2d 232 (6th Cir. 1992)

Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994)

Brown v. Battle Creek Police Department, 844 F.3d 556 (2016)

Celotex Corporation v. Catrett, 477 U.S. 317; 91 L.Ed.2d 265; 106 S.Ct. 2548

(1986)

Certain Interested Underwriters at Lloyd's London, Eng. v. Layne, 26 F.3d 39

(6th Cir. 1994)

City  of Canton v. Harris, 489 U.S. 378; 109; S.Ct. 1997; 103 L.Ed.2d 412 (1989)

City of Los Angeles v. Heller, 475 U.S. 796; 89 L. Ed.2d 806; 106 S. Ct. 1571

(1986)

Collins v. Harker Heights, 503 U.S. 115; 112 S.Ct. 1061; 117 L.Ed.2d 261 (1992)

County of Sacremento v. Lewis, 523 U.S. 833; 140 L.Ed.2d 1043; 118 S.Ct. 1708

(1998)

Department of Agriculture v. Appletree Marketing, L.L.C., 485 Mich. 1, 18 (2010)

Gracey v. Wayne County Clerk, 213 Mich. App. 412; 540 N.W.2d 710 (1995)

Illinois v. Caballes, 543 U.S. 405, 408; 125 S. St 1652; 160 L. Ed.2d 85 (2005)

Koester v. VCA Animal Hospital, 244 Mich. App. 173; 624 N.W.2d 209 (2000)

Malley v. Briggs, 475 U.S. 335; 106 S.Ct. 1092; 89 L.Ed2d 271 (1986)

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)

Messerchmidt v. Millender, __ U.S. __; 132 S. Ct. 1235, 1244; 182 L.Ed.2d 47 (2012)

Monell v. New York City Department of Social Services, 436 U.S. 658; 56 L.Ed.2d 611; 98 S.Ct.2018 (1978)

Mullins v. Cyranek, 805 F.3d 760 (6th Cir. 2015)

Norris v. Police Officers for the City of Lincoln Park, 292 Mich. App. 574; 808 N.W.2d 578 (2011)

Odom v. Wayne County, 482 Mich. 459; 760 N.W.2d 217 (2008)

Oklahoma City v. Tuttle, 471 U.S. 808; 85 L.Ed.2d 791; 105 S.Ct. 2427 (1985)

Pembauer v. Cincinnati, 475 U.S. 469; 89 L.Ed.2d 452; 106 S.Ct. 1292 (1986)

Preston v. City of St. Clair Shores, 2015 WL 12516687

Price v. High Pointe Oil Co., 493 Mich. 238; 828 N.W.2d 660 (2013)

Roberts v. Auto-Owners Ins. Co., 422 Mich. 594; 374 N.W.2d 905 (1985)

Ross v Consumers Power Company, (On Rehearing), 420 Mich. 567; 362 N.W.2d 641 (1984)

Smith v. State of Michigan Department of Public Health, 428 Mich. 540; 410 N.W.2d 749 (1987)

Smith v. Yono, 613 F. Supp. 50 (E.D. Mich. 1985)

Stanton v. Sims, __ U.S. __; 134 S. Ct. 3, 5; 187 L.Ed.2d 341 (2013)

Sudul v City of Hamtramck, 221 Mich. App. 455; 562 N.W.2d 478 (1997)

Thoma v. Tracy Motor Sales, Inc., 360 Mich. 434; 104 N.W.2d 360 (1960)

United States v. Goodwin, 449 F.3d 766 (7th Cir. 2006)

United States v. Janik, 723 F.2d 537 (7th Cir. 1983)

Vanvorous v. Burmeister, 262 Mich. App. 467; 687 N,W.2d 132 (2004)

Wilson v. Morgan, 477 F.3d 326 (6th Cir. 2007)

---

42 U.S.C. §1983

Fed. R. Civ. P. 17(a)

Fed. R. Civ. P. 56

M.C.L.A. 287.266

M.C.L.A. 287.286

Detroit City Code, §6-1-12

Detroit City Code, §6-2-1

## <u>STATEMENT OF FACTS</u>

The instant case arises out of a drug raid conducted on January 14, 2016 at 18488 Sussex, Detroit, MI.  The home at this location was foreclosed on by Wayne County for nonpayment of taxes on March 20, 2015, and was purchased at a tax sale by Suena Homes on November 18, 2015.  (Exhibit B).  Shortly after Thanksgiving, plaintiffs began squatting in the home and selling marijuana.  Due to this, a neighbor called the narcotic hot line (224-DOPE) to lodge a complaint.  (Exhibit C).  Officer Wawrzyniak and a confidential informant conducted a controlled buy at the location, and on January 12, 2016 a search warrant was obtained.  (Exhibit C).

On January 14, 2016, defendants conducted a pre-raid briefing about 15 minutes before the raid.  (Exhibit D).  At this briefing, officer Wawrzyniak discussed such things as the home's location, the controlled buy, a description of the seller and that the informant had indicated that there might be a small dog in the home.  (Exhibit D).  The raid team made the location, gathered on the front porch, knocked and announced "police…search warrant" several times, received no response, and forced entry with a battering ram.  (Exhibit E & F).  Just before forcing entry, the defendants did hear a dog barking.  (Exhibit F).

As the front door swung open to this traditional 1950's bungalow, a vicious barking gray Pit Bull in the vestibule area began charging officer Morrison who was the point man for the raid team.  (Exhibit G).  Officer Morrison fired one shot at the

gray Pit Bull low in the leg because Nikita Smith was in his backdrop (downrange). The dog turned around and ran back into the living room which was to the left of the vestibule.  (Exhibit G).  As officer Morrison and the team began to enter the living room, Ms. Smith asked if she could put up the dog.  (Exhibit G).  Officer Morrison said yes, and Ms. Smith took the dog into the kitchen.  (Exhibit G).

At this point officer Gaines had taken position a few feet from the front door in the entranceway to the dining room.  (Exhibit H).  Officer Gaines had a full view of Ms. Smith holding onto the gray Pit Bull in the kitchen.  (Exhibit H).  Suddenly, Ms. Smith let go of the barking Pit Bull and it immediately charged at officer Gaines. (Exhibit H).  Officer Gaines fired multiple shots at the Pit Bull and they took effect just as the dog got to him.  (Exhibit H).

When officer Gaines was shooting the gray pit bull, officer Morrison's focus was on the east end of the home where there was a hallway, bathroom and two bedrooms.  (Exhibit I).  He heard a dog barking in the bathroom, cracked the door to see if there was a person in with the dog, determined the dog was a Rottweiler and closed the bathroom door.  (Exhibit I).  While standing in the hallway while the bedrooms were being secured, officer Morrison heard thuds on the bathroom door causing to look back and observe that the bathroom door was open with the Rottweiler's head outside the door.  (Exhibit J).  It should be noted that officers Gaines and Howell also saw the Rottweiler open the subject door, and stick its head

2

out in an attempt to escape.  (Exhibits K & L).

The Rottweiler was caught between the door which opened inward and the vanity inside the bathroom.  (Exhibit J).  Officer Morrison fired three shots through the door at the dog's center mass because if the dog got completely out of the bathroom, the officer and Ms. Smith in the living room and he and the two officers with him would be in each others line of fire and otherwise defenseless against the Rottweiler.  (Exhibit J).

During this experience with the Rottweiler, officers Paul and Wawrzyniak went toward the basement steps in order to clear the basement.  (Exhibit M).  Just as they were at the top of the staircase to the basement a barking Pit Bull began charging up the stairs toward them.  (Exhibit M).  Officer Paul shot the dog some five times, and the shots took effect.  (Exhibit M).

Plaintiffs have asserted claims against the six police officers for illegal seizure of the dogs in violation of the 4th Amendment under 42 U.S.C. §1983, three alternate Monell claims against the City of Detroit, and claims for conversion and intentional infliction of emotional distress under state law.  (Exhibit A).  It is defendants contention that there is no genuine issue of material fact regarding any of the above claims, and as such, defendants are entitled to judgment as a matter of law.

## **STANDARD OF REVIEW**

This motion is brought pursuant to Fed. R. Civ. P. 56(c). With reference to that rule, it is significant that the issue raised in the motion goes to the plaintiff's case in chief rather than an affirmative defense and that the plaintiff accordingly bears the burden of proof on that issue. In <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) the Supreme Court noted that:

> ... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party, who **fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at the trial.** In such a case there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'  [T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...' [cite omitted]  91 L.Ed.2d at 273 - 274  (Emphasis added).

Once the movant in a Rule 56(c) motion identifies the issue as to which it maintains there is no genuine issue of material fact, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The <u>Celotex</u> holding was followed and developed in <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986), which was decided

4

the same day as <u>Celotex</u>. In <u>Anderson</u> the Court emphasized that not just any issue of fact is sufficient to avoid summary judgment. Rather, the issue must be both material and genuine. A fact issue is material only if "it might affect the outcome of the suit under the governing law." 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id</u>. A fact issue is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>.

## <u>LAW AND ARGUMENT</u>

### <u>PLAINTIFFS' CLAIM OF ILLEGAL SEIZURE OF THEIR DOGS IN VIOLATION OF THE 4TH AMENDMENT IS SUBJECT TO DISMISSAL BECAUSE THEY DID NOT HAVE A LEGITIMATE PROTECTED PROPERTY INTEREST IN THE DOGS</u>

It has long been held that a person has no legitimate property interest protected by the 4th Amendment in contraband. <u>Illinois v. Caballes</u>, 543 U.S. 405, 408; 125 S. St 1652; 160 L. Ed.2d 85 (2005); <u>United States v. Goodwin</u>, 449 F.3d 766, 770 (7th Cir. 2006); <u>United States v. Janik</u>, 723 F.2d 537, 547 (7th Cir. 1983). ***C**ontraband is any property which is unlawful to produce or possess*. Black's Law Dictionary, 5th Ed., p.291. For example, in <u>United States v. Janik</u>, police seized Mr. Janik's unregistered disassembled submachine gun without a warrant. <u>Id</u>. at 540-41. However, the 7th Circuit ruled that Mr. Janik did not have a legitimate property interest protected by the 4th Amendment because the gun was contraband. <u>Id</u>. at 547.

Likewise a minor possessing alcoholic beverage which he purchased has no legitimate property interest protected by the 4th Amendment, and as such, the police can simply confiscate it. Further, a person may have purchased a bag of marijuana, but they have no legitimate property interest protected by the 4th Amendment unless they have a medical marijuana card. In each of the above instances, plaintiff could have had a legitimate property interest protected by the 4th Amendment had they complied with the law. That is, had Mr. Janik registered his guns, the minor been 21 years of age and the person who bought marijuana had a medical marijuana card.

The 6th Circuit has held that pet dogs are personal property, and as such, unreasonable seizure of that property is a violation of the 4th Amendment. Brown v. Battle Creek Police Department, 844 F.3d 556, 566 (2016). A seizure of property occurs when there is a meaningful interference with the individual's possessory interests in that property. Id.

M.C.L.A. 287.266 is part of the Michigan Dog Law of 1919, and in pertinent part, provides as follows:

> Sec. 6. (1) The owner of a dog that is 4 or more months old shall apply to the treasurer of the county or, except as provided in section 14, the treasurer of the township or city where the owner resides, or to the treasurer's authorized agent, for a license for each dog owned or kept by him or her.

M.C.L.A. 287.286, in pertinent part, provides as follows:

> Sec. 26. Any person or police officer violating or failing or refusing to comply with any provisions of this act shall be guilty of a misdemeanor…

6

In addition to Michigan law, the Detroit City Code, §6-2-1, in pertinent part, provides as follows:

> (a)  It shall be unlawful for any person to own, harbor, keep, or shelter a dog more than four (4) months of age within the City without purchasing a license for the dog…
>
> ***
>
> (c)  The Animal Control Division is authorized to impound, sell, euthanize, or dispose of any unlicensed dog consistent with the Michigan Dog Law of 1919…

Detroit City Code, §6-1-12, in pertinent part, provides as follows:

> (a)  It shall be unlawful for any person to violate any provision of this chapter, or to aid and abet another to violate any such provision.
>
> ***
>
> (c)  Except as provided in subsection (d) of this section, any person who is found guilty of violating this chapter shall be convicted of a misdemeanor for each ordinance violation that is issued…

As can be seen from the above, dogs are required to be licensed pursuant to Michigan statute and Detroit City Ordinance.  It is unlawful to own, harbor or keep a dog that is not licensed.  Without being licensed, an unlicensed dog is property which is unlawful to possess or contraband.  As the courts have indicated, there is no legitimate property interest protected by the 4th Amendment in contraband.  In the instant case, plaintiffs' three dogs were not licensed, and accordingly, were contraband.  (Exhibit N).  As such, plaintiffs' 4th Amendment claims under §1983 are subject to dismissal.  It should be noted that this does not mean that plaintiff

7

cannot bring claims under state law, but only that without proper licensing, plaintiff is precluded from bringing illegal seizure claims under 42 U.S.C. §1983 due to not having a legitimate property interest in the dogs.

## PLAINTIFFS' CLAIMS OF ILLEGAL SEIZURE OF THEIR DOGS IN VIOLATION OF THE 4TH AMENDMENT AGAINST JEFFREY WAWRZYNIAK, SADIE HOWELL AND ROY HARRIS ARE SUBJECT TO DISMISSAL

In cases involving allegations of unreasonable seizure, the court should first determine whether a 4th Amendment seizure has occurred.  Adams v. City of Auburn Hills, 336 F.3d 515, 519 (6th Cir. 2003).  If no seizure occurred, no consideration of the reasonableness of the officer's conduct is necessary for the purposes of qualified immunity.  Id.  In the instant case, it is undisputed fact that Sgt. Harris, officer Howell and officer Wawrzyniak did not fire their weapons, and as such, did not seize the dogs.  Plaintiff bears the burden of producing evidence creating a genuine issue of fact in this regard, and cannot.  In sum, the three officers are entitled to dismissal of plaintiffs' 4th Amendment claims under §1983.

## PLAINTIFF NIKITA SMITH'S CLAIMS ARE SUBJECT TO DISMISSAL BECAUSE SHE IS NOT A REAL PARTY IN INTEREST AND OTHERWISE HAS NO POSSESSORY INTERESTS IN THE SUBJECT DOGS

Fed. R. Civ. P. 17(a), in pertinent part, provides as follows:

**(a) Real Party in Interest.**  Every action shall be prosecuted in the name of the real party in interest…

8

The real party in interest analysis turns on whether the substantive law creating the right being sued upon affords the party bringing suit a substantive right to relief. Certain Interested Underwriters at Lloyd's London, Eng. v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994).  Ms. Smith's claims all teeter on whether she has a possessory interest in the three dogs who were shot.

First, Ms. Smith has admitted that she did not buy the subject dogs, but rather her boyfriend, Kevin Thomas purchased all three of the dogs.  (Exhibit Q & R).  According to officer Morrison, Ms. Smith was asked to handle the Rottweiler in the bathroom, but she said she could not because none of the dogs were hers. (Exhibit S).  Finally, Ms. Smith is not related by marriage or blood to Mr. Thomas. In a word, Ms. Smith had no possessory interest in the three dogs.  To have such an interest she would have to related to Mr. Thomas by marriage or blood and/or have contributed to the dogs' purchase.  If not, then virtually anybody can join as a plaintiff in an illegal seizure claim under the 4th Amendment and claim devastating emotional damages.

In sum, friends who did not partake in buying the dog do not have a legitimate property interest sufficient to claim emotional damages in a §1983 claim under the 4th Amendment.  If they do, governmental entities could end up with any number of plaintiffs for each allegedly unreasonably seized dog.

## <u>DEFENDANT OFFICERS HAVE QUALIFIED IMMUNITY AS TO PLAINTIFFS'ILLEGAL SEIZURE CLAIM UNDER 42 U.S.C. §1983</u>

Police officers are immune from civil liability under 42 U.S.C. §1983 unless, in the course of their discretionary functions, they violate a plaintiff's clearly established constitutional rights.  <u>Messerchmidt v. Millender</u>, __ U.S. __; 132 S. Ct. 1235, 1244; 182 L.Ed.2d 47 (2012);  <u>Brown v. Battle Creek Police Department</u>, 844 F.3d 556, 565 (6th Cir. 2016);  <u>Mullins v. Cyranek</u>, 805 F.3d 760, 765 (6th Cir. 2015). Qualified immunity provides officers room to make reasonable but mistaken judgments, and protects all but the plainly incompetent and those who knowingly violate the law.  <u>Stanton v. Sims</u>, __ U.S. __; 134 S. Ct. 3, 5; 187 L.Ed.2d 341 (2013); <u>Brown, supra</u>;  <u>Mullins</u>, supra.

A police officer is entitled to qualified immunity unless on an objective basis it is obvious that no reasonably competent officer would have concluded that his conduct was lawful.  <u>Malley v. Briggs</u>, 475 U.S. 335, 341; 106 S.Ct. 1092; 89 L.Ed2d 271 (1986).  Put another way, if officers of reasonable competence could disagree on the issue of whether particular conduct is unconstitutional, then immunity should be granted.  <u>Malley, supra.</u>

In determining if an officer is entitled to qualified immunity, courts apply a two step test: (1) whether the facts, when taken in a light most favorable to plaintiff,

show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such that a reasonable officer would understand that his conduct violates that right. <u>Mullins</u>, supra. Since it is clearly established in the 6th Circuit that people have a 4th Amendment constitutional right to not have one's dog unreasonably seized, it becomes the courts duty to determine whether, in light of the totality of circumstances, the officer's seizure of the three dogs violated plaintiffs' 4th Amendment right. <u>Brown</u>, supra at 566-567.

In determining the reasonableness of seizing/shooting a dog, the court should analyze whether the dog constitutes an imminent threat from the perspective of a reasonable officer on the scene as opposed to the 20/20 vision of hindsight. <u>Brown</u>, <u>supra</u> at 567. This analysis allows for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a given situation. <u>Id</u>. An imminent danger is an immediate, real threat to one's safety that justifies the uses of force in self-defense or the danger resulting from an immediate threatened injury sufficient to cause a reasonable person to defend himself or herself. <u>Id</u>.

The standard set forth by the <u>Brown</u> court is as follows:

> ***Thus, the standard we set out today is that a police officer's use of deadly force against a dog while executing a warrant to search a home for illegal drug activity is reasonable under the Fourth***

11

*Amendment when, given the totality of the circumstances and viewed from the perspective of an objectively reasonable officer, the dog poses an imminent threat to the officer's safety.* Id at 568.

The facts in <u>Brown</u> are virtually identical to the instant case. In <u>Brown</u>, the officers were on their way to execute a search warrant when they were informed that there was a dog at the subject residence. <u>Id</u>. at 562. The raid crew arrived at the home, and saw a sign posted outside which said "beware of dog". <u>Id</u>. When they got to the front porch, they observed two Pit Bull dogs barking aggressively. <u>Id</u>. When the raid crew breached the front door, the larger Pit Bull barked at the first officer entering the house, lunged at him and he shot the dog. <u>Id</u>. at 563. Both dogs then ran down the basement stairs. <u>Id</u>.

The crew then began to descend the basement stairs to clear the basement. <u>Id</u>. When the crew was about half way down the basement stairs, the wounded Pit Bull who was at the bottom of the stairs began barking. <u>Id</u>. In response, officers shot and killed the dog because it was not safe to try and get past the animal. <u>Id</u>. When the crew entered the basement the other Pit Bull was standing in the middle of the basement barking but not moving toward the crew. <u>Id</u>. The officers shot the dog, the dog ran to a corner, the dog was shot again and ran behind the furnace, and was then killed by a third shot to put it out of its misery. <u>Id</u>.

The <u>Brown</u> court affirmed summary judgment granted to defendants by the trial court finding that the seizure/shooting of the two dogs was reasonable because

12

the dogs threatened the crew's safety in clearing the basement.  Id. at 570.  As important, the court rejected the notion that the officers should have made alternative arrangements to protect the dogs.  Id. at 571.  The court indicated that raid crew really had no meaningful time to formulate an alternative, but even if they had such time, advance arrangements could have alerted the criminals to run, destroy evidence or formulate plans to attack the crew.  Id.  Accordingly, not using nonlethal alternatives was deemed reasonable.  Id.

In the instant case, the parallels to Brown are stunning.  Defendant officers were attacked by the two pit bulls, and as such were in imminent danger of severe injury.  The Rottweiler was barking, aggressively trying to and on the verge of escaping from the bathroom.  Once out of the bathroom, the dog would be between three officers in the bathroom hallway and an officer with Ms. Smith in the living room effectively leaving no defense to the dog's attack as the officers were in each other's line of fire.  Again, this clearly posed an imminent danger which had to be reacted to by officer Morrison within a couple seconds.  Finally, nonlethal alternatives in dealing with the dogs were unreasonable given the crew learned there might be a small dog in the home about 15 minutes prior to the raid, and had no way of knowing that there were actually three vicious dogs in the home.

Given the above, the individual defendants are entitled to qualified immunity as to plaintiffs' Federal Civil Rights claims.

13

## PLAINTIFFS' INTENTIONAL TORT CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE CITY OF DETROIT ARE SUBJECT TO DISMISSAL

M.C.L.A. 691.1407(1) grants municipalities immunity from tort liability, and in pertinent part, provides as follows:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

In Ross v Consumers Power Company, (On Rehearing), 420 Mich. 567; 362 N.W.2d 641 (1984), the Michigan Supreme Court held that governmental agencies are immune from tort liability arising out of any governmental function, such function being activities expressly or impliedly mandated or authorized by constitution, statute or law. Id. at 620; Sudul v City of Hamtramck, 221 Mich. App. 455, 482; 562 N.W.2d 478 (1997). The Ross court took pains to point out that governmental agencies had a broad grant of immunity, while in contrast, immunity afforded to individual governmental employees was far less. Ross, supra at 635; Sudul, at 482. In determining whether immunity exist for governmental agencies, the focus is simply on the general nature of the activity. Id.

14

The above principles have been directed applied to a municipality's liability for the acts of its police officers.  Ross, at 625; Sudul, at 484.   Specifically, a city cannot be held vicariously liable for the alleged intentionally tortuous conduct of its police officers committed during the scope and course of their duties because they are engaged in a governmental function.  Smith v. State of Michigan Department of Public Health, 428 Mich. 540, 543; 410 N.W.2d 749 (1987); Ross, supra; Smith v. Yono, 613 F. Supp. 50 (E.D. Mich. 1985).  ***Simply put, there is no intentional tort or gross negligence exception to immunity afforded governmental agencies as long as the actor is engaged in a governmental function.***  Smith, supra; Ross, supra; Gracey v. Wayne County Clerk, 213 Mich. App. 412, 420-21; 540 N.W.2d 710 (1995).

As a final matter, Intentional Infliction of Emotional Distress and Conversion are intentional torts.  Department of Agriculture v. Appletree Marketing, L.L.C., 485 Mich. 1, 18 (2010).

In the case at bar, Defendant officers were undisputedly engaged in a governmental function at the time of shooting plaintiffs dogs.  As such, the City is entitled to dismissal of plaintiff's' intentional tort claims for Intentional Infliction of Emotional Distress and Conversion.

15

## PLAINTIFFS' MONELL CLAIM AGAINST THE
## CITY OF DETROIT IS SUBJECT TO DISMISSAL

It is well settled that in order to establish a claim under 42 U.S.C. § 1983 against a municipality, Plaintiff must plead and prove a custom, policy, practice and/or procedure which caused a violation of Plaintiff's constitutional rights. Pembauer v. Cincinnati, 475 U.S. 469; 106 S.Ct. 1292; 89 L.Ed.2d 452 (1986); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91; 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978). Liability must be predicated on more than allegations that a municipal employee is a tortfeasor. Monell, supra at 691. In fact, a municipality *cannot* be found liable under §1983 on a respondeat superior theory. Oklahoma City v. Tuttle, 471 U.S. 808; 105 S.Ct. 2427; 85 L.Ed.2d 791 (1985); Monell, supra.

With respect to proving a custom, policy, practice and/or procedure which caused an alleged constitutional violation, the same must have originated from a decision maker with final policy making authority. Pembauer, supra at 482. Moreover, the custom, policy, practice and/or procedure must be the "moving force" behind the alleged constitutional violation to establish municipal liability. Monell, supra at 694. Finally, where Plaintiff proceeds on a theory that factually lawful government policy lead an employee to violate Plaintiff's constitutional rights,

16

Plaintiff must plead and prove that the agency was not just negligent but acted with deliberate indifference to known or obvious consequences.  City of Canton v. Harris, 489 U.S. 378; 109 S.Ct. 1997; 103 L.Ed.2d 412 (1989).  Deliberate indifference is shown only where the municipal policy is constitutionally arbitrary such that it is egregious to the point of "shocking the conscience".  County of Sacramento v. Lewis, 523 U.S. 833; 118 S.Ct. 1708; 140 L.Ed.2d 1043 (1998) quoting Collins v. Harker Heights, 503 U.S. 115, 129; 112 S.Ct. 1061; 117 L.Ed.2d 261 (1992).

The City of Canton v. Harris line of cases allows a Plaintiff to establish a municipal "policy or custom" through presenting evidence that a failure to train and/or discipline officers shows deliberate indifference on the part of municipal policymakers to the rights of its citizens.  City of Canton, supra;  Berry v. City of Detroit, 25 F. 3d 1342 (6th Cir. 1994). *In establishing a de facto municipal policy predicated on failure to train, a Plaintiff must show that the City's training programs are inadequate to the tasks the officers are to perform; the inadequacy is a result of the City's deliberate indifference; and that the inadequacy actually caused the Plaintiff's injury*.  Berry at 1346.

Deliberate indifference is shown only where the need for more or different training is so obvious, and the inadequacy so likely to result in constitutional violations, that the policy makers can be reasonably said to have been deliberately

17

indifferent to this need.  Canton, supra; Barber v. City of Salem, 953 F.2d 232, 236 (6th Cir. 1992).  In addition, the Berry court indicated that in failure to train claims, deliberate indifference can be shown by establishing that the City was aware of wide spread constitutional violations, yet ignored them such that the City could be said to have given tacit authorization to the officers' constitutionally aberrant conduct. Berry, supra at 135.

Additionally, the Canton court indicated that showing a particular officer is inadequately trained or that Plaintiff's injury could have been avoided had an officer had better training will not suffice to fasten liability to a municipality.  Canton, supra at 391.  In fact, Summary Judgment is proper absent a showing that training deficiencies caused the constitutional deprivation alleged by plaintiff.  Canton, supra; Smith v. Yono, 613 F. Supp. 50 (E.D. Mich. 1985).

As a final, yet most important matter, it is well settled that where plaintiff does not suffer a constitutional injury at the hands of municipal employees, there can be no municipal liability under Monell, supra.  City of Los Angeles v. Heller, 475 U.S. 796, 799; 89 L. Ed.2d 806; 106 S. Ct. 1571 (1986); Wilson v. Morgan, 477 F.3d 326, 340 (6th Cir. 2007).  As the claims against the individual defendants are subject to dismissal as set forth in Argument A, plaintiffs suffered no constitutional injury at defendants' hands.  As such, the Monell claim against the City of Detroit is subject to summary judgment.

18

Quite apart from the above, plaintiff cannot proffer a single micro-dot of admissible evidence that any City of Detroit policy, custom or procedure was the moving force behind defendant officers alleged constitutionally aberrant conduct. First and foremost, there is no evidence that the City was aware of widespread constitutional violations of Fourth Amendment rights to be free of unreasonable seizures of one's dog.  There simply is no evidence that the need for further training was so obvious due to these alleged wide spread constitutional violations that the City was deliberately indifferent.  Further, there is no evidence that the City's training was inadequate to the tasks defendant officers were to perform, that any inadequacy was known to the City, that the City's alleged failure to train defendant officers was a result of deliberate indifference because of a pattern of widespread constitutional violations and/or that this alleged failure was the moving force behind the shooting of plaintiffs' dogs.

Finally, the City has a written policy regarding dangerous animals with the law which provides that an "officer may shoot a dangerous and/or rabid animal that is posing an imminent threat of danger to the officer or others only when bystanders are not in jeopardy".  (Exhibit O & P).

Plaintiffs' first Monell theory appears to be that the Mayor or Police Chief delegated their final policy making authority to the individual defendant officers. This is an inane argument, and is unsupported by a nanogram of evidence.  The

second <u>Monell</u> theory is a failure to train, and this has been adequately dispatched of above.   The final <u>Monell</u> theory is based based on respondeat superior. Unfortunately, a municipality ***cannot*** be found liable under §1983 on a respondeat superior theory.   <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808; 105 S.Ct. 2427; 85 L.Ed.2d 791 (1985);   <u>Monell</u>, supra at 691.

In sum, plaintiffs cannot show that a genuine issue of material fact exists with respect to plaintiffs Federal Civil Rights claims against the City of Detroit under <u>Monell</u>, <u>supra</u>.   As such, the City is entitled of plaintiffs' <u>Monell</u> claims.

## <u>PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE INDIVIDUALDEFENDANTS IS SUBJECT TO DISMISSAL</u>

A prima facie case of Intentional Infliction of Emotional Distress requires four elements:   (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.   <u>Roberts v. Auto-Owners Ins. Co.</u>, 422 Mich. 594, 602; 374 N.W.2d 905 (1985); Vanvorous v. Burmeister, 262 Mich. App. 467, 481; 687 N,W.2d 132 (2004).   Pets have long been considered personal property in Michigan jurisprudence.   <u>Koester v. VCA Animal Hospital</u>, 244 Mich. App. 173, 176; 624 N.W.2d 209 (2000).   Moreover, under Michigan law one cannot collect noneconomic/emotional damages for loss of real or personal property.   <u>Price v. High Pointe Oil Co.</u>, 493 Mich. 238, 264; 828 N.W.2d 660 (2013); <u>Koester, supra</u> at 211-212.   As plaintiffs cannot establish the element of severe emotional distress as a

matter of law, defendant officers are entitled to summary judgment.

It should be noted that this issue  and the issue of conversion below have been ruled on by Judge Steven Murphy in <u>Preston v. City of St. Clair Shores</u>, 2015 WL 12516687.  (Exhibit U).  In the <u>Preston</u> case, the same attorney who represents the plaintiffs in this case brought a dog shooting case against St. Clair Shores and several of its police officers.  The court dismissed all plaintiff's claims including the identical claims for Intentional Infliction of Emotional Distress and Conversion.

## **<u>PLAINTIFFS' CLAIM FOR CONVERSION AGAINST THE INDIVIDUAL DEFENDANTS IS SUBJECT TO DISMISSAL</u>**

Conversion is defined as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with rights in the personal property.  <u>Thoma v. Tracy Motor Sales, Inc.</u>, 360 Mich. 434, 438; 104 N.W.2d 360 (1960).  However, liability does not arise if the actor is privileged to dispose of the chattel.  <u>Id</u>.  As previously pointed out in Argument A, plaintiffs dogs were not licensed.  As set forth in Argument A, the Michigan Dog Law of 1919 and Detroit City Code require that all dogs be licensed by the City, and make it a misdemeanor and otherwise unlawful to possess the dog otherwise.  See M.C.L.A. 287.266; M.C.L.A. 287.286; Detroit City Code, §§6-1-12, 6-2-1.  Pursuant to Detroit City Code, §6-2-1(c), officers are privileged to dispose of the unlicensed dogs in accordance with their duties to enforce state and local laws

regarding pet licensing.  As privilege existed, plaintiffs' claim for conversion is subject to summary judgment.

## PLAINTIFFS' CLAIMS FOR CONVERSION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE INDIVIDUAL DEFENDANTS ARE SUBJECT TO DISMISSAL DUE TO IMMUNITY

Generally, lower level government employees such as police officers are immune from intentional tort liability when they are (1) acting within the scope of their authority; (2) acting in good faith or without malice; and (3) performing discretionary, as opposed to ministerial acts.  Odom v. Wayne County, 482 Mich. 459, 473; 760 N.W.2d 217 (2008); Ross v. Consumer's Power Co (On Rehearing), 420 Mich. 567, 633-34; 363 N.W.2d 641 (1984).  The good faith element is subjective in nature, and protects a defendant's honest belief and conduct taken in good faith with the cloak of immunity.  Odum, supra at 481-82; Norris v. Police Officers for the City of Lincoln Park, 292 Mich. App. 574, 578; 808 N.W.2d 578 (2011).  Discretionary acts are those that require personal deliberation, resolution and judgment.  Norris, supra.

A police officer's decisions regarding how to respond to a citizen, how to safely defuse a situation, and how to effectuate a lawful arrest are discretionary. Norris, supra at 579.  When addressing a claim of force that allegedly occurred, discretion must be reposed in the police officer concerning the means necessary.  Id.

22

This discretion cannot be passed upon by court or jury unless it has been abused through malice, wantonness, or reckless indifference to the common dictates of humanity.  Id.  Good faith means acting without malice.  Id.  Malice is the intent, without justification or excuse, to commit a wrongful act.  Black's Law Dictionary (9th ed).

In the case at bar, defendant officers were attacked by the two pit bulls, and as such were in imminent danger of severe injury.  The Rottweiler was barking, aggressively trying to, and on the verge of escaping from the bathroom.  Once out of the bathroom, the dog would be between three officers in the bathroom hallway and an officer with Ms. Smith in the living room effectively leaving no defense to the dog's attack as the officers were in each other's line of fire.  Again, this clearly posed an imminent danger which had to be reacted to by officer Morrison within a couple seconds.  Finally, nonlethal alternatives in dealing with the dogs were unreasonable given the crew learned there might be a small dog in the home about 15 minutes prior to the raid, and had no way of knowing that there were actually three vicious dogs in the home.

The individual defendants were acting within the scope of their employment, making discretionary decisions without malice, they are entitled to immunity.

## <u>PLAINTIFFS' CLAIM FOR DAMAGES TO THE DOG SHOT ON THE BASEMENT STEPS IS SUBJECT TO DISMISSAL</u>

Ms. Smith had admitted in her sworn deposition testimony that she was in the living room when officers Paul and Wawrzyniak confronted a Pit Bull on the basement steps.  She has acknowledged that she did not see the shooting, and does not know what occurred.  (Exhibit T).  Accordingly, the undisputed testimony is that officers Paul and Wawrzyniak went toward the basement steps in order to clear the basement.  (Exhibit M).  Just as they were at the top of the staircase to the basement a barking Pit Bull began charging up the stairs toward them.  (Exhibit M).  Officer Paul shot the dog some five times, and the shots took effect.  (Exhibit M).  There was an imminent danger to the officers, and as such, shooting the dog was a reasonable seizure.  Accordingly, plaintiffs cannot collect damages for the dog shot on the basement steps.

## <u>CONCLUSION</u>

For the forgoing reasons, defendants respectfully request this Honorable Court enter an Order dismissing all claims against them, and awarding costs and interest so wrongfully incurred.

Respectfully Submitted,


 /s/Michael M. Muller
**MICHAEL M. MULLER (P-38070)**
Dated: March 15, 2017        **Attorney for Defendants**

24

**DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**NIKITA SMITH AND**
**KEVIN THOMAS,**

             **Plaintiffs,**                **Case No.  16-11882**

**v.**                                    **Hon: George Caram Steeh**

**CITY OF DETROIT, AND**
**POLICE OFFICER BASHAWN GAINES,**
**POLICE OFFICER WILLIAM MORRISON,**
**POLICE OFFICER RYAN PAUL,**
**POLICE OFFICER JEFFREY WAWRZYNIAK,**
**POLICE OFFICER SADIE HOWELL, AND**
**SGT. ROY HARRIS,**

             **Defendants.**

| **CHRISTOPHER S. OLSON (P-58780)** | **MICHAEL M. MULLER (P-38070)** |
|---|---|
| Attorney for Plaintiff | Attorney for Defendant City |
| 32121 Woodward Avenue, Suite 300 | 2 Woodward Avenue, Suite 500 |
| Royal Oak, MI 48073 | Detroit, MI 48226 |
| (248) 672-7368 | (313) 237-5052 |
| colson@olsonpllc.mygbiz.com | mullm@detroitmi.gov |

**<u>PROOF OF SERVICE</u>**

       I hereby certify that on March 15, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record with the court.

                       **/s/Michael M. Muller**